*177
 
 Battle, J.
 

 The relators having heretofore obtained a writ of alternative mandamus against the defendants from the Judge of the Superior Court of Law, for the county of Ashe, to which the defendants made their return, in which they set forth the reasons why they had not performed the duties required of them, and upon that return, the Court having made an order for a peremptory mandamus, the defendants took an appeal therefrom to the Supreme Court.
 

 The proceedings are founded upon the Tth and 8th sections of the act of 1858, chapter 4, entitled “ An act supplemental to an act to lay oif and establish a county by the name of Alleghany, passed by the present session of the General Assembly.” The Tth section required of certain persons, therein named as commissioners, to select and locate a site for the county town at, or as near the geographical centre of the county as practicable, and for that purpose, to purchase, or obtain by donation, a tract of land of not more than one hundred acres, “ to be conveyed to the chairman of the county court and his successors in office, for the use of the said county.” This duty, the relators alleged in their petition, had been performed, and the object of the mandamus prayed for, was to compel the defendants to appoint five commissioners “ to lay off the lots of the said town,” and to perform the other duties required of them by the 8th section of the act.
 

 The only facts set out in the return of the defendants, upon which their counsel relied in the argument here, in opposition to the order for the peremptory mandamus, are, first, that the commissioners, who were appointed to locate and select
 
 a
 
 town for the county seat, did not, in performing that duty, act upon their own judgments, but upon the result of a vote of a majority of those citizens of the new county, who voted upon the subject; and, secondly, that the said commissioners had never notified the defendants, as justices, either in writing or verbally, that they had selected a site for the county town, and purchased, or obtained by donation, the land upon which it was to be located.
 

 We are decidedly of opinion, that neither of these objec
 
 *178
 
 tions can avail the defendants. The justices of the county-court have, clearly, no right to go behind the action of the locating commissioners, and enquire by what motives they were prompted in the performance of their duty. The commisj sioners did precisely what they were authorised and required bylaw to do, and it would be singular, indeed, if the validity of their act depended upon the motives, good or bad, by which they were actuated in doing it.
 

 With regard to the second objection, it is admitted by the defendants that the commissioners had taken a deed, by which the grantor conveyed fifty acres of land to the chairman of the county court, for the use of the county, in which deed, however, one acre was excepted. It is admitted that this deed was deposited in the office of the clerk of the county court, and the defendants knew that fact. That act of the locating commissioners, so far as we can see, was all that the law contemplated, in order to make it the duty of the defendants to appoint commissioners for performing the duties enjoined by the 8th section of the act. We cannot discover that the locating commissioners were required to give any kind of notice to the defendants, of what they had done, it being supposed that when the deed for the land, which they were required to procure, was filed in the office of the clerk of their court, they would know it, and would thereupon immediately proceed to appoint commissioners for laying out the lots and streets of the town, selling lots, &c., so that the public buildings of the county might be erected as soon as practicable.
 

 We have considered the case as if all the proceedings were proper; but in truth, it was irregular that,two returns should have been made, one by a majority and the other by a minority of the justices of the county. As we said in the case of
 
 McCoy
 
 v.
 
 The justices of
 
 Harnett, 4 Jones’ Rep., 180. “A mandamus to ‘the justices of a county,’ issues against them as a body, and not as separate individuals; so they must make ‘a return’ as a body. To this end, it is proper for the justices to convene and, a majority being present, as for the transaction of any other county business, to agree upon
 
 *179
 
 the facts which are to be set out for their return. In this, as in other cases, a majority of those present will govern.— They will then appoint some one of their body, who, as their agent, is to make the proper affidavit, and do all other acts and things which may become necessary in the course of their proceeding.” But, notwithstanding the irregularity to which we have alluded, as the parties and their counsel have treated the return of a majority of the justices, as “the return of the justices of the county” we have regarded it as such, and, so regarding it, we .find nothing in it to prevent the relators from having an order for a peremptory mandamus against them; the judgment of the Superior Court to that effect, must therefore be affirmed.
 

 Per Curiam,
 

 Judgment affirmed.